All right, Ms. Mullaney, we'll hear from you first. We understand you were appointed under the Criminal Justice Act and the court appreciates your willingness to accept the appointment. You may proceed. Thank you, Your Honor. I'm here representing Gregory Bartunek in this appeal, this conviction at the district court level. Today I'll be arguing that the cumulative effect of the evidence that was allowed to be presented by the prosecution that was objected to by Mr. Bartunek painted a picture of Mr. Bartunek as a dangerous sexual assailant. And some of this evidence, the evidence we'll be dealing with today, was not necessary to establish the underlying charges and should not have been presented at trial. Because the prosecution was allowed to present this evidence, it is not possible to know whether the jury convicted Bartunek based on the evidence that was presented of the charged crime, possession, and distribution of child pornography, or based on those fears that the jurors had that Bartunek was dangerous and would sexually assault minor children. Specifically, I'm going to argue today that the trial court should have excluded the following evidence. First, photographs of dolls that were found at Mr. Bartunek's residence when a search warrant was executed there and testimony regarding those dolls as well from Officer Pecha. Second, testimony of SP related to charges against Mr. Bartunek that had been dropped nearly 20 years prior to this trial. And third, I'm going to argue that the trial court should have granted a mistrial due to testimony of Officer Pecha at trial regarding a visit to Mr. Bartunek's house in 2013. First, I'm going to summarize the facts. Mr. Bartunek was indicted on counts of distribution of child pornography, both counts. Prior to trial, Mr. Bartunek filed motions in limine to exclude any evidence or testimony regarding several dolls that were found in his residence and to exclude testimony of one of the prosecution's witnesses, SP. The trial court overruled Mr. Bartunek's motions. He reasserted these motions at the appropriate times at trial and his motions were again overruled. And because these motions were overruled, the jury was allowed to hear and see the following. They heard testimony regarding dolls that were found at Mr. Bartunek's residence. Officer Stigge testified that there were several dolls found in Mr. Bartunek's bedroom, including a male and female, each approximately five years old or younger, and two male infants or toddlers. Officer Stigge further testified that two of the dolls seemed to be modified with a rubber penis attachment and that the infant dolls seemed to have been manufactured with a penis. The United States offered exhibits 21 through 26, depicting the dolls in various poses, and exhibits 21 through 26 were entered into evidence and published to the jury over Mr. Bartunek's objections. Why wasn't it relevant evidence on the question whether he committed the charged offenses? Your Honor, these dolls were not, they were not part of any of the images that were found at Mr. Bartunek's residence. They weren't related to those images. The images didn't involve the dolls. But was it circumstantial evidence that he was the person who caused the images to be on his computer by showing that he had an interest in this sort of image or material? Your Honor, I think it's a fine line between showing that somebody has a sexual interest in children and showing that somebody has a sexual interest in general. This is why we've drawn some analogy to other cases where evidence is excluded when it's evidence of sex toys found at the same residence as pornographic images or male enhancement products that are found at the same residence of somebody who possesses pornographic images. There's nothing about this legal activity, the activity that the dolls suggest, there's nothing about that that makes it more likely that he downloaded and uploaded pornography. I think this is how we can distinguish between the present case and this court's prior decision in Steinmetz. Here, in that case, the prosecution was allowed to present images that involved bondage of an adult individual because those images were minor individuals. So these are almost the exact same conduct just regarding an adult and a child. In this case, the dolls are related to a completely separate conduct than downloading or distributing pornographic images. They are part of those images, they are analogous to those images, they are similar enough to those images to be admitted for that purpose. Counselor, in one of your cases, I think it's a demo, we'll call it, the New Mexico case, but in that very case they admitted photographs on the computer depicting children in a story with sexual overtones, which seems even weaker than the evidence here, and that was admitted. I realize the male enhancement stuff was kept out, but not that. Why doesn't your own case say that there is at least relevance to intent, knowledge, and lack of mistake? Because these images were not found in the same location, or sorry, the dolls were not found in the same location as any of the images. The computer that was in the defendant's living room was in a separate location from these dolls. He was the only resident of the home, right Counsel? Excuse me? He was the only resident of the room, right Counsel? That's correct, Your Honor. They're separate enough from these images that they should not be considered evidence, should not be considered to those images in ADAMO, and in that case we were dealing with images and images. Here we're talking about images and dolls. I mean, it's images and devices. They're of a different nature than the images that were allowed in ADAMO. Did the judge give a 404B instruction in this case, or did the evidence just come in without limitation on the dolls? I don't believe there was a limiting instruction on the dolls, Your Honor. There was a limiting instruction given with regards to the testimony of SP, which is the... Right, but on the dolls, which is what we're talking about, usually if evidence comes in under Rule 404B, it would have a limiting instruction, so if there was no instruction, I take it that the judge let it in without limitation, and therefore presumably thought it was relevant to the charge defense. Your Honor, I believe that was the judge's decision. It was based on the relevance to the charge defense and not based on 404B. Okay, thank you. The second group of evidence or the testimony that the defendant sought to exclude was the testimony of SP. SP testified about information related to charges against the defendant that were dropped nearly 20 years prior to the defendant's trial. Counsel doesn't bear words of Rule 414 and the Steinmetz case, and there was a limiting instruction here. What could be wrong with this one? There are a couple of problems, Your Honor. First of all, it's the... We're not just hearing testimony from this individual about pornography that he viewed with Mr. Bartunek. His testimony goes so far beyond that. That's the first issue. He testified that he viewed pornography with Mr. Bartunek, but he went on to testify that he believed he had become a sexual abuser based on his contact with Mr. Bartunek. He testified that the person that he sexually abused also knew Mr. Bartunek, setting Mr. Bartunek up as some kind of conduit between SP and his own victim. His testimony went so far beyond the similar conduct that it had initially been presented for that it kind of blows that out of the water. Second of all, there still has to be, even if something is admissible under 414, there still has to be a 403... Sorry. There still has to be an analysis of whether it is more unfairly prejudicial than it is probative of the crimes committed. I would urge that the court look at the factors that have been used by the Tenth Circuit in... I don't know the pronunciation exactly on this one, but I believe NJOTI. The four factors look at how clearly the prior bad act was proven, how probative the evidence is of the material fact is admitted to prove, how seriously disputed the material fact is, and whether the government can avail itself of any less prejudicial evidence. Especially under this first prong, looking at how clearly these prior acts were proven, these are accusations and they're related to charges that were ultimately dropped. I believe the prosecution, or at this point, the appellee has brought another case to bear, a recent Eighth Circuit decision that is distinguishable from the present case. In that case, we were dealing with a conviction. In fact, in all the cases on point here, we're dealing with convictions, not accusations. In this case, this testimony was allowed even though it was an accusation, and it was related to charges that were dropped 20 years prior to the trial. Looking at those factors, I think, and applying them to the present case, urges against admitting this evidence under the analysis of whether it should have been allowed in based on its probative value versus its danger front to cause unfair prejudice. Finally, the testimony of Officer Pecha was not objected to in a motion in limine, because it was not expected that that testimony would go as far as it went. Officer Pecha testified about having visited the defendant's house in 2013, having seen this orange traffic cone outside of the defendant's house that said CHIMO on it, an abbreviation for child molester. That's not in the record, though, is it, counsel? That wasn't discussed at trial as to what it really meant, right? They just said that it was CHIMO in all capital letters. I'm right. No one said, what's it mean? Correct. Nobody asked what it meant. The judge, the jury, the lawyers, nobody. But I think a common sense interpretation of that would be that it's a truncated version of those two words, a portmanteau, I guess, of those two words put together. I think that that's the conclusion the jury reached. That's the danger. Limiting instruction on this one, too, right, Your Honor? But our contention is that the bell had already been rung and it couldn't be un-rung. Ultimately, when you put all of this evidence together cumulatively, I think it can't be said to be harmless. All of this, each of these things together, not necessarily each of these things apart, but all of these things together, allowed to be admitted, there's a very real danger that the jury convicted, not based on the evidence presented, but based on their fear of Mr. Bartuni. Your Honor, if I could reserve my remaining time for rebuttal. You may. Thank you for your argument. Thank you. Mr. Norris, we'll hear from you. Thank you. May it please the court. We're asking this court to affirm the convictions for distributing child pornography as well as for the possession of child pornography. The three issues on appeal are all reviewed for the same abuse of discretion by the trial judge. The first issue relating to admitting photographs of the four life-size infant, toddler, to five-year-old dolls dressed in children's clothing, two of which having a fake penis appended to them, located in his residence, located in his bedroom, dressed in children's clothing with a dresser that also included his boxer shorts, no other toys present in the house, and that was offered under 401. Admitting the testimony of SP, who met Bartuni at the age of 14, who at the age of 14 spent daily, or was with him daily, they would smoke cigarettes, they would drink alcohol, but more importantly, they would watch child pornography on a frequent, if they were a two-year period, and that was offered under Rule 414 for propensity as well as for identity, lack of mistake, knowledge. And finally, there was no abuse of discretion for denying Mr. Bartuni's request for a mistrial based on an inquiry that was relevant, that was found to be relevant by the court, and that was given a limiting instruction. I'll start with the dolls and address that argument first. So again, these are modified life-size replicas of small children that are found in a male's place of residence, where he's the only one who's living there, who's probably, if recollection suits me, is at the time more than 60 years old. The replicas were life-size images. They were life-size images of children, very similar to those children that were found in the three different devices that were located in the house. Counsel, that's not in the record, is it, how similar they are to the actual photographs, right? Well, I think it is. I think if you look at the three different drives that were located, that were seized from his residence, and then you look at the restore points that were done with regard to the internal hard drive, which was just found feet away from the dolls, that PNY thumb drive had three images that were published to the jury. They were very young boys, including one that had a reference to Du Bois' first time. With regard to the external hard drive, the external hard drive had approximately 26, if I recall correctly, images that came from Du Bois. And Omegle.com is significant because Omegle randomly matches people so that they can share like interests. And although we don't know what the Omegle like interest was that got him there, we do know that with regard to the eight images that are in his allocated space, with regard to the external hard drive, they are very similar, coming to Omegle, with regard to young boys. Those were published for the jury as well. With regard to the restore points and the, I believe it's drive 36, those also showed a number of graphic files, graphic images, as well as file names that were consistent with young boys and child pornography. So the evidence was out there. It wasn't, in fairness, if there were 350 images on the PNY thumb drive, we didn't say how many of those were of this nature. But of this nature was found on each and every one of those hard drives. I heard gender loud and clear. Is that the main connection? Yes, and size. And three of the dolls were boys as opposed to girls. The underwear found in the drawer was more superhero type underwear. I think that connection can definitely be made. And again, these weren't American girl dolls. These weren't Barbies. These weren't Star Wars replicas. These were life size replicas of children that were modified in order to, if nothing else, heighten what his sexual desires or what his interest was with regard to both the kind of child pornography and his interest. The district court did not abuse its discretion and it correctly recognized that this was admissible as circumstantial evidence under Rule 401 and 402. If you look at page 221 and page 226 of the transcript, you will see that at 221, that's the end of the first day of trial. And the judge says, with regard to the pictures of the dolls, I didn't want to do it in front of the jury, but having looked at it in more detail, I think at the very least it's a 404B issue. But I would. I would agree and that's why I let it in. I think in this case, given the timing that the search warrant was for, what was found on the search warrant, that it rises to the level of circumstantial evidence and it's not propensity evidence in this case. So that was the basis of my ruling. In referring to 401, I meant that it met certainly the relevancy test. I don't think it's propensity evidence. When he starts trial the next morning outside the presence of the jury, he says, I did do a 403 evaluation of that evidence, those pictures, and based upon that, I did not find the probative value was substantially outweighed by unfair prejudice, confusion, misleading the jury, or other factors in 403. And I want to state that for the record. There was not a limiting instruction that was given with regard to the dog, but a limiting instruction was not necessary because he accepted it under 401, made it clear that he was accepting it under both 401, 402, and that he had done the balancing test. And so therefore that was a direct recognition that this was direct evidence that was intertwined with the charges at hand. The court's correct though too, it could have also been 404B evidence because it showed the identity, it showed knowledge, it showed a connection between the evidence that was otherwise found on the hard drives. It was fairly clear, and it's abundantly clear actually. I don't understand that argument. I don't understand how it showed identity. That he's the one who's downloading the child pornography, that he's the one who's sharing the child pornography with regard to Omegle. If that's what identity means in 404B, then it's no limitation at all. I mean, all evidence in a criminal case is designed to show that the defendant is the one who did the crime, but that doesn't mean it's all identity evidence. That's true, and whether I went a bridge too far with that statement or not, I don't think I did with regard to the fact that what you see is sharing on Omegle, which is consistent with what's found in the room as far as those dolls go, and I think that's where the identity connection comes in. But it also goes to knowledge, lack of mistake, and again, expresses what his interest is, especially when you see a tagline such as, boy's first time. What do you mean by lack of mistake? That is one where, I mean, it's not a mistake that it's showing up on his computer. It is by design. It's of his interest. It shows his sexualized interest in children. That's all that means. But again, this goes directly to it was allowed under 401, it was allowed in 402, and there was a balance test with regard to 403, and it is intertwined with the charges that he was charged with. I'll turn my comments now to S.P. unless there are any other questions with regard to the dolls. Seeing none, I'll go ahead with S.P. Can we go back to the dolls for a moment? Yeah, sure. Simple possession of those dolls would not have constituted any crime, would it? Absolutely not. Simple possession of those dolls, but this court in Defogey was asked to determine whether or not First Amendment statements that was made by Mr. Defogey that were otherwise legal, but talked about wanting to behead children, talk about sexually being a predator of children, that those were evidence. In a bank robbery case, I cited this example in my brief. I can wear a mask, a ski mask, into a bank, but that becomes direct evidence of the fact that I robbed the bank if, in fact, I robbed the bank and leave and that all sorts of instances in which a otherwise non-contraband article is now direct evidence and relevant to the charge. Turning my attention to the Rule 414 issue and the testimony of S.P., again, the district court did not abuse its discretion. This is clearly propensity evidence. It's clearly allowed under Rule 414. There was proper notice given. That notice was given in the context of a pretrial brief. It was given in the form of the actual notice of what the government intended to use under Rule 414. It was the subject of a motion in limine and fully vetted. It was probably, in all likelihood, the subject of a detention hearing that happened earlier with regard to why he was detained. There was a proper 403 analysis that was conducted by the court and a limiting instruction was provided by the court before S.P. ever provided any testimony. The district court's evidentiary rulings are wholly consistent with this court's previous rulings in Emmert, in Steinmetz, and the recent one in Splitsdozer, which I gave a 28-J letter to. I will tell you that Splitsdozer and, to me, Steinmetz merely amplify. I don't think they say anything all that differently than what this court has said in Emmert in 2016 or what it said in Steinmetz in 2018 or what it just said last month with regard to Mr. Splitsdozer. The notice that the government gave was at number 77 or filing 77. We talked about three areas in which we could use 414 evidence. It's important to note that we only used one. The first we suggested that it was relevant for and that we could use was the repeated viewing of child pornography that S.P. did with Bartunek on a daily basis from the age of 14 through 15, even when Mr. Bartunek moved to another apartment. That's what the government put on evidence of and that's what it was limited to. We also gave notice and we also had authority and permission to use two other pieces. That would be Bartunek engaging in sexual acts with S.P. immediately after viewing the child pornography that S.P. could and would have testified to, but we opted not to do that. Bartunek had some more recent charges that involved the sexual abuse of a six-year-old that we had that six-year-old standing by and, again, opted not to use it. You're going away from the record, aren't you, counsel? You're getting further and further and further away from the record, I think. Well, that's why we opted not. We didn't need to use all of that and that's where the piling on, I believe, would have came on, but we used what we thought was the minimum. I'm not going to call it relevant. I don't understand how it's relevant to the appeal that you could have used other evidence. Why are you telling us about that? That's a good point and a fair point. Let me ask you this then. What authority do we have on Rule 414 that involves 20-year-old activity to show propensity? Do we have anything that goes that far back? You have Gabe that talks about how 20 years is not a model. You have, I believe it's both case timets that talk about conduct that is approximately 20 years old. The absence of any limitation that is put on Rule 414 and how those cases talk about how there's not a age limit on Rule 414 are the evidence that you're looking. Circling back to the question you asked, I guess I am telling you that there were other 414 evidence that we could have used because the theory of this appeal is that we piled on and we piled on and we piled on. All right. I misunderstood. I thought the theory of the appeal was that what came in was error. Well, I think it is. I mean, on a three-level, but I think the opening part of the argument today talked in the context of how one on top of the other and the cumulative effect. You think the Gabe case involved 20-year-old evidence? Is that what you're saying? I think so. To be honest with you, they all kind of say the same thing, as I indicated before. I know that Steinmetz involved more than just the garment, the sexual garment. It also involved anime. If I, I think I can tell you. Yeah, the Gabe case, I'm looking at it, it cites some other cases involving 20 years, so maybe. Yeah, I guess it was 20 years ago, yeah. I want to say that Steinmetz does the same. Did the judge address the age in his ruling? He did not. I don't recall him doing that. Again, he did give a balancing. I see at 25 seconds, I can address the mistrial or I can just wrap it up and say, I'm asking you to report, and thank you for your time. Very well. Thank you for your argument. Ms. Mullaney, we'll hear from you and Revalo. Thank you, Your Honor. Just to hit on a couple of points that the appellee dealt with in his argument. I think when it comes to the dolls, that analogy to a mask is helpful, but it's because it's so different from the images presented as evidence. The mask is relevant because it's used in a burglary or used in a robbery. Here, there's no evidence that these dolls were actually part of this downloading or distributing of child pornography. The only similarity between these dolls and those images that were part of the evidence for the underlying charges is that they involve children. That's the similarity. You agree with gender? I've got to correct you. I think that's, we boiled Mr. Norris down to gender. Three of the dolls were male. One was female. Thank you. I also wanted to make one correction that not all of the dolls had been aftermarket altered. One of them, Officer Stiggy testified, was manufactured anatomically correct. It manufactured with that penis was part of it. That's in the trial transcript volume one at 212. Secondly, turning to the testimony of SP, I think you have to look at both the age of the allegations and the fact that they are related to charges that were dropped. In combination, those two elements make these allegations and this evidence less reliable than that that's presented in some of the other cases cited by the prosecution. Finally, just to wrap up, if there are no further questions, we're asking that Mr. Bertunek's conviction be overturned or that he be given in the alternative a new trial. Thank you. All right. Thank you for your argument. Thank you to both counsel. The case is submitted and the court will file an opinion in due course. Thank you, Your Honor. That concludes the argument session for this afternoon. The court will be in recess.